IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

NO. 3:18-CV-105

| | |
|---|---|
| FRANK MORENO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EXPEDIA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT EXPEDIA, INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION
OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

Defendant Expedia, Inc. ("Expedia"), by and through counsel, and hereby submits this Memorandum of Law in Support of its Motion to Compel Arbitration or, in the alternative, Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Plaintiff Frank Moreno ("Plaintiff" or "Mr. Moreno") initiated this lawsuit on January 30, 2018, asserting a claim under the Consumer Protection Act (RCW 19.86) of the State of Washington and a claim under an unidentified "Federal law" for false or misleading advertising arising out of Plaintiff's decision to utilize Expedia's website (www.expedia.com) to book travel accommodations in or around Charleston, South Carolina in December 2017.

Like other online service providers, Expedia has in place terms of use governing the use of its services, which customers must acknowledge and agree to before making a reservation

1

using the Expedia website[1]. The "terms of use" that were in effect in December 2017 (the "Terms of Use") at the time of Plaintiff's reservations specifically provided that the Expedia.com website was being "offered to [the customer] conditioned upon" the customer's acceptance "of all the terms, conditions and notices set forth" therein and that by "accessing or using [the] website, booking any reservations for travel products or services on [the website], or contacting our call center agents, [the customer] agree[d] that" the Terms of Use applied.[2] To complete his reservations for hotel accommodations through Expedia, Plaintiff was required to click a "Complete Booking" button, above which appeared a hyperlink to the Terms of Use, so that he could fully review the applicable policies. By clicking, and completing his reservation, Plaintiff acknowledged that he had read and accepted the Terms of Use, including a provision requiring <u>all</u> disputes or claims relating to Plaintiff's use of Expedia's services be resolved by arbitration.

As a result of Plaintiff's acceptance of the Terms of Use, and the arbitration provision set forth therein, this Motion can be resolved by a straightforward application of the Federal Arbitration Act and controlling case law. Specifically, the Federal Arbitration Act mandates that where, as here, a valid arbitration agreement exists and a dispute falls within its purview, the Court has "no choice but to grant a motion to compel." *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 500-01 (4th Cir. 2002).

---

[1] Expedia's records show that Plaintiff made two hotel reservations, one via Expedia's website, and the other through Expedia's mobile website accessible via a cellular telephone. For each reservation, Plaintiff would have had to acknowledge that he had read and accepted Expedia's Terms of Use. *See* Declaration of Sibel Abreu ("Abreu Dec."), attached as Exhibit 1 to Expedia's Motion to Compel Arbitration, at ¶ 3-7, 11-14, Exs. A, B, D. Expedia recognizes that Plaintiff's interactions with Expedia's customer service representative form the basis of his claims. The contemporaneous documentation, however, demonstrates that the second reservation was made through Expedia's mobile website and not over the phone through the Expedia representative, as Plaintiff alleges. (Abreu Dec. ¶¶ 11-13, Ex. D) As with all reservations through Expedia, Plaintiff's mobile website reservation was also subject to the Terms of Use. (*Id.* at ¶¶ 5, 11, Ex. C).

[2] *Id.* at Ex. C.

2

Case 3:18-cv-00105-GCM   Document 9   Filed 03/29/18   Page 2 of 18

**STATEMENT OF FACTS**

In considering a Motion to Compel Arbitration, the Court may consider the plaintiff's pleading as well as evidence submitted by the movant to establish the factual basis of the motion and to authenticate the documents constituting the agreement to arbitration. *Erichsen v. RBC Capital Mkts., LLC*, 883 F. Supp. 2d 562, 566 (E.D.N.C. 2012); *see also Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 264 n. 3 (M.D.N.C. 2016).

A. **Expedia's Terms of Use:**[3]

Expedia, Inc. is a travel company based in the State of Washington that, among other things, owns and operates travel booking websites including www.expedia.com (the "Website") through which consumers may investigate, and reserve, a variety of travel-related products, including, as it relates to this litigation, hotel rooms. As referenced above, consumers who utilize the Website agree to the then-applicable terms of use. Specifically, in December 2017, when Plaintiff made hotel reservations through Expedia, consumers were required to acknowledge that they had read and accepted the applicable Rules & Restrictions, Terms of Use, and Privacy Policy before completing a reservation and submitting payment therefor. (Abreu Dec. ¶ 5, Ex. B).

The Terms of Use in effect in December 2017 encouraged consumers to "**read these Terms of Use carefully, as they contain important information about limitations of liability and resolution of disputes through arbitration rather than in court**[,]" and warned consumers that by "using this Website, booking any reservations for travel products or services on this Website, or contacting our call center agents, you agree that the Terms of Use then in

---

[3] Expedia's reference to, and incorporation of, its Terms of Use are offered in support of its Motion to Compel Arbitration and are not offered in support of its alternative Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

force shall apply." (Abreu Dec. Ex. C, p. 1) (emphasis in original). Those Terms of Use also contained a "Disputes" section that provides, in pertinent part:

> You agree to give us an opportunity to resolve any disputes or claims relating in any way to the Website, any dealings with our customer service agents, or any services or products provided, any representations made by us, or our Privacy Policy ("Claims") by contacting Expedia Customer Support or 1-877-787-7186. If we are not able to resolve your Claims within 60 days, you may seek relief through arbitration or in small claims court, as set forth below.
>
> **Any and all Claims will be resolved by binding arbitration, rather than in court**, except you may assert Claims on an individual basis in small claims court if they qualify…. **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including statutory damages, attorneys' fees and costs), and must follow and enforce these Terms of Use as a court would.**
>
> Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules, except as provided in this section. If your total Claims seek less than $10,000 we will reimburse you for filing fees you pay to the AAA and will pay arbitrator's fees….

(Abreu Dec. Ex. C, pp. 2-3) (emphasis in original). The Terms of Use also included a choice of law provision providing that any dispute between the parties would be governed by the FAA and federal arbitration law. (*Id.* at p. 3).[4]

### B. Plaintiff's Use of Expedia's Services:

On December 2, 2017, Plaintiff and his wife travelled from their home in Charlotte, North Carolina to Charleston, South Carolina to celebrate their wedding anniversary. (Compl. p. 1). According to the Complaint, Plaintiff had made a hotel reservation through the Website,

---

[4] The Terms of Use further provide that they are governed by, or to be construed under, "the Federal Arbitration Act, federal arbitration law, and for reservations made by U.S. residents, the laws of the state in which [the customer's] billing address is located, without regard to principles of conflicts of laws." (Abreu Dec. Ex. C p. 19).

sometime before departure.[5] Upon arrival at the hotel, however, Plaintiff learned that his reservation was for an entirely different night. (*Id.*). After being told that the price of a reservation for the night of December 2nd would be higher than what Plaintiff believed he had reserved, Plaintiff and his wife decided to look for a hotel closer to the beach. (*Id.*).

Plaintiff thereafter alleges that he went to the Website to identify a suitable alternative closer to the beach and, according to the allegations in the Complaint, noted that a room at the Seaside Inn, Isle of Palms, South Carolina, had a room available for a price of $119.00. (*Id.* at pp. 1-2). Plaintiff and his wife called Expedia's customer service line to inquire about their original reservation, cancel that reservation (which, again, was for an entirely different night) and "reverse the charges back to their credit card", and to see if they could get a room at the Seaside Inn. (*Id.* at p. 2). Plaintiff alleges that the Expedia representative "was hard to understand and was very confused about what [he and his wife] were asking," but that at some point the Expedia representative communicated that "he saw 1 room available, and it was for $159[.]" (*Id.*). Plaintiff and his wife pointed out that they were seeing "5 rooms available" on the Website, but the Expedia representative allegedly insisted there was only 1 room available. (*Id.*). Ultimately, Plaintiff and his wife allege they were told by the Expedia representative that the 1 room was no longer available and they were offered assistance booking a room at another hotel, but said they "would call back to find another soon." (*Id.* at p. 3). Plaintiff alleges that they then drove directly to the Seaside Inn where they discovered "that 75% of the hotel was empty" and that they could reserve a standard room for $119.00 a night. (*Id.*).

---

5   As referenced above, to reserve a room utilizing the Website, Plaintiff was required to acknowledge and agree to the Terms of Use, including the arbitration provision set forth therein.

5

Case 3:18-cv-00105-GCM   Document 9   Filed 03/29/18   Page 5 of 18

Although the allegations in the Complaint regarding Plaintiff's reserving a room at the Seaside Inn are unclear, Expedia's records reflect that Plaintiff ultimately reserved a room at the Seaside Inn through the mobile version of the Website. (Abreu Dec. ¶ 12-13, Ex. D). In so doing, Plaintiff again had to acknowledge and agree to the Terms of Use, including all provisions relating to dispute resolution, upon completing his booking on the Website. (*Id.* at ¶ 14). Accordingly, Plaintiff agreed to arbitrate any claims "relating in any way to the Website, any dealings with [Expedia's] customer service agents, or any services or products provided, [or] any representations made by [Expedia][,]" including the claims asserted in this litigation. As a result of Plaintiff's acceptance of Expedia's Terms of Use, this case should be dismissed so that Plaintiff's claims can be resolved by an arbitrator pursuant to the parties' agreement.

## ARGUMENT

### I. THIS COURT SHOULD GRANT EXPEDIA'S MOTION TO COMPEL ARBITRATION.

**A. Legal Standard.**

The Federal Arbitration Act ("FAA") applies to provisions in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, agreements to arbitrate are "valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* In recognition of the strong Federal policy favoring arbitration, the Court must compel arbitration if: (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F. 3d 553, 563 (4th Cir. 2015). Accordingly, the FAA directs federal courts to "rigorously enforce agreements to arbitrate." *Shearson/Amer. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F. 2d 809, 812 (4th Cir. 1989) ("The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.").

If a dispute is subject to arbitration under the FAA, the Court may stay judicial proceedings involving issues covered by written arbitration agreements. 9 U.S.C. § 3; *Moses H. Cone*, 460 U.S. at 22 (recognizing that 9 U.S.C. §§ 3 and 4 "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."). Additionally, the Fourth Circuit has held that dismissal is also a proper remedy "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F. 3d 707, 710 (4th Cir. 2001).

**B. The FAA Governs Plaintiff's Arbitration Agreement with Expedia.**

Here, the evidence before the Court demonstrates the FAA applies. There is no dispute that Plaintiff utilized Expedia's services to reserve two separate hotel rooms in or around Charleston, South Carolina in December 2017. Then, and now, Defendant was a citizen and resident of North Carolina and Expedia was, and is, located in the State of Washington. (Compl. at p. 1). Accordingly, the subject of the agreement between the parties involves the purchase and delivery of services in interstate commerce. As referenced above, prior to booking the hotel reservations that are the subject of this litigation, Plaintiff agreed to Expedia's Terms of Use, including but not limited to the arbitration provision set forth therein. (Abreu Dec. ¶ 5, 14, Exs. B, C). That provision specifically provides that "[t]he Federal Arbitration Act and federal

arbitration law apply to this agreement." (Abreu Dec. Ex. C, p. 3). Accordingly, there can be no dispute that the FAA applies.

> **C. The Arbitration Provision in the Terms of Use is a Valid Agreement to Arbitrate.**

The fundamental question the Court must answer in deciding a Motion to Compel Arbitration is whether the parties entered into a valid agreement to arbitrate. The validity of any such agreement is a question of state law governing contract formation, *Snow v. Citibank*, 2015 U.S. Dist. LEXIS 23624, *10-11 (E.D.N.C. Jan. 20, 2015), but "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the arbitration act, due regard must be given to the federal policy favoring arbitration." *Cara's Notions v. Hallmark Cards*, 140 F. 3d 566, 569 (4th Cir. 1998). Here, the last act required to form an agreement between the parties (Plaintiff's decision to select "Complete Booking" on the Website) occurred in North Carolina. Accordingly, North Carolina law governs the validity of the parties' agreement. *See also* Abreu Dec., Ex. C p. 19 (providing that the Terms of Use agreed to by Plaintiff shall be interpreted according to the FAA and the law of the state in which the customer resides).

Under North Carolina law, the essential element for formation of a contract is the manifestation of the parties' intent to be bound. *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921) (recognizing that mutual assent is an "essential element" of every contract). In the context of online transactions, the courts have consistently held that consumer agreements are valid and enforceable where, as here, a user must affirmatively acknowledge and agree to contractual terms by checking a box or clicking a button as a condition of proceeding with his transaction. *See Bergenstock v. LegalZoom.com, Inc.*, No. 13-CVS-15686, 2015 WL 3866703, 2015 NCBC 63 (N.C. Super. Ct., June 23, 2015) (finding that an enforceable

8

arbitration agreement existed where the consumer purchased internet services after clicking on a button acknowledging that the purchase was subject to terms of use that included an arbitration provision); *see also Keena v. Groupon, Inc.*, 192 F. Supp. 3d 630 (W.D.N.C. 2016); *Kraft Real Estate Investments, LLC v. HomeAway.com, Inc.*, 2012 WL 220271 (D.S.C. Jan. 24, 2012) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F. 3d 17, 22 n. 4 (2d Cir. 2003)); *Costar Realty Info, Inc. et al. v. Field*, 612 F. Supp. 2d 660 (D. Md. 2009); *A.V. v. iParadigms Liab. Co.*, 544 F. Supp. 2d 473 (E.D. Va. 2008), *rev'd in part on other grounds by A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F. 3d 630 (4th Cir. 2009); *Carson v. Lending Tree, LLC*, 456 Fed. Appx. 234 (4th Cir. 2011) (unpublished).

In evaluating whether a consumer is bound by arbitration provisions contained in website terms of use, the courts focus on whether the purchaser "had actual or constructive notice of the terms of use which included an agreement to arbitrate." *Bergenstock*, 2015 WL 3866704 at *5 (citing *Van Tassei v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (reasoning that the determination of whether a contract is valid "depends on whether the user has actual or constructive knowledge of a website's terms and conditions")); *see also AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 510 (W.D. Va. 2013) (holding all that must be shown to find a binding arbitration agreement is that the user had "actual or constructive knowledge of the site's terms and conditions, and manifested assent to them."). Thus, even if a consumer does not affirmatively "check a box" specifically agreeing to the terms of use, he or she can still be bound. *AvePoint*, 981 F. Supp. 2d at 510. In particular, the Courts have repeatedly held that where the terms of use were available to the consumer via a hyperlink, they were bound to those terms if they proceeded with the transaction. *See Fagerstrom v. Amazon.com, Inc.*, 2015 WL 6393948, *11 n. 6 (S.D. Cal. Oct. 21, 2015) (enforcing arbitration agreement where terms of use

containing agreement were hyperlinked immediately below a "Review your order" header); *Sherman v. AT&T, Inc.*, 2012 WL 1021823, *3 (N.D. Ill. March 26, 2012) (recognizing that checking a box or clicking a button "next to hyperlinked terms generally provides adequate notice"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. Aug. 4, 2011) (enforcing arbitration clause accessible via a hyperlink next to a button on a registration page); *Hubbert v. Dell Corp.*, 825 N.E. 2d 113, 121 (Ill. App. Ct. 2005) (enforcing arbitration agreement accessible to consumer via hyperlink because hyperlinks "should be treated the same as a multipage written paper contract.")

Here, prior to reserving each of his hotel accommodations, Plaintiff was required to review summary information about each reservation under an "Important information about your booking" section of the Website. (Dec. at ¶ 5, 14, Ex. B.) As part of the review, Plaintiff was required to acknowledge the he had read and accepted, among other things, the Terms of Use, which themselves included embedded hyperlinks to ensure that users could fully review all applicable policies. *Id.* By selecting the "Complete Booking" button and completing the transaction, Plaintiff confirmed that he had both reviewed <u>and accepted</u> the Terms of Use, including the arbitration provision set forth therein. *Id.* Similar to the numerous cases where courts enforced online terms of use agreements referenced above, Plaintiff could not have proceeded with booking any reservation utilizing Expedia's services without affirmatively agreeing to the Terms of Use and the arbitration provision set forth therein. *See, e.g.*, *Kraft Real Estate*, 2012 WL 220271; *Keena*, 192 F. Supp. 3d 630. As such, there can be no dispute that Plaintiff entered into a valid agreement to arbitrate.

10

### D. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Finally, Plaintiff's claims indisputably fall within the scope of the arbitration agreement. Plaintiff and Expedia agreed that "[a]ny and all Claims will be resolved by binding arbitration, rather than in court[.]" (Dec. Ex. B, p. 2). "Claim" was defined to include "<u>any</u> disputes or claims <u>relating in any way</u> to the Website, any dealings with our customer service agents, any services or products provided, [or] any representations made by" Expedia. (*Id.*). This language gives rise to a presumption of arbitrability. *See AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (finding the presumption "particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract'"); *Levin v. Alms & Associates, Inc.*, 634 F. 3d 260, 267 (4th Cir. 2011) (same).

To the extent there is any question regarding the arbitrability of Plaintiff's claims, that question should be answered by the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.") (internal citations omitted). Specifically, the parties agreed that any dispute relating to Plaintiff's use of Expedia's services would be resolved through arbitration "conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules." (Abreu Dec. Ex. C, p. 3). The AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim* or counterclaim." *See* Rule 7 of the

AAA Commercial Arbitration Rules and Mediation Procedures.[6] Those same Rules also authorize the arbitrator to "determine the existence or validity of a contract of which an arbitration clause forms a part." *Id.* As such, it is ultimately up to the arbitrator to determine whether Plaintiff's claims are subject to arbitration. *See, e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F. 3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered this issue has determined that incorporation of the [AAA's] arbitration rules constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F. 3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, 2012 WL 12785, *5 (E.D. Va. Jan. 4, 2012) (endorsing "the rule adopted by a majority of federal courts…that the incorporation of AAA Rules into a contract clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which issues are subject to arbitration") (internal quotations omitted).

For the reasons set forth above, Expedia respectfully submits that it has met its burden of demonstrating that the parties entered into a valid agreement to arbitrate and Plaintiff's claims fall within the scope of that agreement. Accordingly, this Court should dismiss this case in favor of arbitration. *Chorley Enter.,* 807 F. 3d at 563.

---

[6]The AAA Rules may be accessed at: https://www.adr.org/sites/default/files/Commercial%20Rules.pdf.

## II. IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS PURSUANT TO RULE 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

In the alternative, Plaintiff's claims are subject to dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, because Plaintiff lacks standing to assert claims under the FTCA and/or the Lanham Act for alleged false advertising and Plaintiff has otherwise failed to state claims for which relief may be granted under Federal or State law.

### A. Plaintiff Has Failed to State a Claim for Relief Under Federal Law for "False Advertising."

As referenced above, Plaintiff has asserted claims under unidentified "Federal law" that "allows consumers to be awarded a variety of remedies against any business that engaged in false or misleading advertising." (Compl. at p. 4). Although Plaintiff does not identify the precise "Federal law" under which he seeks relief, references within the Complaint suggest he is referring to the Federal Trade Commission Act ("FTCA"), which, among other things, authorizes the United States Federal Trade Commission to prevent unfair or deceptive acts or practices in or affecting commerce. 15 U.S.C. §§ 41, *et. seq.* (2017). The FTCA, however, "confers no private right of action" on consumers. *Sideshow, Inc. v. Mammoth Records, Inc.*, 751 F. Supp. 78, 80 (E.D.N.C. 1990); *see also L&H Investments, Ltd. v. Belvey Corp.*, 444 F. Supp. 1321, 1325 (W.D.N.C. 1978) (dismissing plaintiff's claim under Section 5 of the Federal Trade Commission Act because "there is no private right of action"); *Marshall v. Miller*, 302 N.C. 539, 542, 276 S.E. 2d 397, 399 (1981) (citing *Holloway v. Bristol-Myers Corp.*, 485 F. 2d 986 (D.C. Cir. 1973), *Carlson v. Coca Cola Co.*, 483 F. 2d 279 (9th Cir. 1973)) (same).

Alternatively, Plaintiff could be seeking redress under Section 43(a) of the Lanham Act, which prohibits any party from misrepresenting "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"

15 U.S.C. §§ 1125 (2017). Although there is a private right of action under the Lanham Act for such conduct, "[t]he Fourth Circuit has squarely held that consumers do not have standing to sue under the Lanham Act." *Foster v. Wintergreen Real Estate Co.*, 2008 WL 4829674, *10 (W.D. Va. Nov. 6, 2008) (citing *Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F. 3d 278, 281 (4th Cir. 2004)); *see also Mylan Laboratories, Inc. v. Matkari*, 7 F. 3d 1130, 1139 (4th Cir. 1993) (recognizing that the Lanham Act provides "a private remedy [for a] *commercial plaintiff* who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.") (emphasis added). Plaintiff alleges that he and his wife utilized Expedia's services to book a hotel room to celebrate their anniversary – demonstrating that the services were obtained for purely personal reasons. (Compl. p. 1). Accordingly, to the extent Plaintiff purports to rely on the Lanham Act to support his claims, those claims must be dismissed because Plaintiff, as a consumer, has no standing to bring them.

### B. Plaintiff Has Failed to State a Claim Under Washington State's Consumer Protection Act.

Plaintiff has asserted a claim under the Consumer Protection Act, chapter 19.86 RCW ("CPA") of the State of Washington, where Expedia's principal office is located.[7] That statute prohibits, in pertinent part, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020 (2015). "To prevail on a private CPA claim, a private plaintiff must show (1) an unfair or deceptive act or practice, (2)

---

[7] Although Plaintiff' is not a resident of, nor did his injuries occur in, the State of Washington, the Supreme Court of Washington has held that the remedies set forth in the CPA are available to non-resident consumers where the alleged wrongdoer is located in the State of Washington. *See Thornell v. Seattle Service Bureau, Inc.*, 184 Wash. 2d 793, 803, 363 P. 3d 587, 592 (2015) ("The CPA does allow claims for an out-of-state plaintiff against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington. The geographic limitations that defendants urge this court to adopt defeat the CPA's twin purposes of protecting the public and foster fair and honest competition[.]").

14

that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 73, 170 P. 3d 10, 17(2007) (*en banc*) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784-85, 719 P. 2d 531 (1986)). Whether an act is unfair or deceptive is a question of law, but a plaintiff must satisfy all five elements to prevail. *Id.*

Here, Plaintiff has failed to allege facts demonstrating either that he has suffered an injury to his property that is compensable under the CPA or that there is a causal link between Expedia's alleged unfair and deceptive conduct and any alleged injury. Plaintiff alleges that Expedia's customer service representative falsely stated that only one room was available at the Seaside Inn at a rate of $159 when, as alleged by Plaintiff, multiple rooms were available for a lower rate. (Compl. at pp. 2-3). Plaintiff, however, does not allege that he and his wife relied on this statement in any way. To the contrary, he alleges that as he and his wife "continued toward Isle of Palms, they continued to converse with rep. The rep continued to say book now, book now before it goes, and then all of a sudden, the rep told my wife the room was gone." (*Id.*). According to Plaintiff, he and his wife continued to discuss the booking with Expedia's customer service representative, who offered to help them book a room at another hotel. (*Id.* at p. 3). In response, "Plaintiff's wife told the rep we would call back soon to find another." (*Id.*). Plaintiff and his wife thereafter went to the Seaside Inn where they were allegedly informed by an employee of the Seaside Inn that there were multiple rooms available directly through the hotel at a rate of $119.00. (*Id.* at p. 4). This discovery allegedly "caused Plaintiff and his wife a lot of stress" and they "did not call Expedia back." (*Id.*).

Accepting Plaintiff's allegations as true, as the Court must at this stage of the litigation, Plaintiff did not incur any pecuniary damage as a result of any alleged conduct by Expedia's representative. First, Plaintiff acknowledges that he and his wife *did not* book a room as a result of the Expedia representative's statements, but continued to discuss the issue with him as they drove towards the Seaside Inn – a conversation that concluded with Plaintiff and his wife stating they would call the representative back to discuss booking a room at *another* hotel. (Compl. at pp. 2-3). Under such circumstances, Plaintiff cannot establish a causal link between any alleged misrepresentation by Expedia's representative and any alleged injury incurred by Plaintiff. *See Indoor Billboard*, 162 Wash. 2d at 83, 170 P. 3d at 22 ("where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, our case law establishes that there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury" and to establish such a causal link, the plaintiff must establish that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.").

Moreover, the only "injury" identified by Plaintiff is the "stress" he and his wife allegedly incurred in trying to locate "another room" at a higher price or in an area that they did not want. (Compl. at pp. 3, 6). Such alleged injuries, however, are *not compensable* under the CPA. *See Trujillo v. Northwest Trustee Services, Inc.*, 183 Wash. 2d 820, 836, 355 P. 3d 1100, 1108 (2015) (en banc) (recognizing that "emotional distress, embarrassment, and inconvenience are not compensable injuries under the CPA"); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d. 27, 57, 204 P. 3d 885 (2009) (recognizing that the CPA's requirement that injury be to business or property excludes "mental distress, embarrassment, and inconvenience."). In the absence of any compensable "injury to the [P]laintiff in his… business or property" that was

16

Accepting Plaintiff's allegations as true, as the Court must at this stage of the litigation, Plaintiff did not incur any pecuniary damage as a result of any alleged conduct by Expedia's representative. First, Plaintiff acknowledges that he and his wife *did not* book a room as a result of the Expedia representative's statements, but continued to discuss the issue with him as they drove towards the Seaside Inn – a conversation that concluded with Plaintiff and his wife stating they would call the representative back to discuss booking a room at *another* hotel. (Compl. at pp. 2-3). Under such circumstances, Plaintiff cannot establish a causal link between any alleged misrepresentation by Expedia's representative and any alleged injury incurred by Plaintiff. *See Indoor Billboard*, 162 Wash. 2d at 83, 170 P. 3d at 22 ("where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, our case law establishes that there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury" and to establish such a causal link, the plaintiff must establish that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.").

Moreover, the only "injury" identified by Plaintiff is the "stress" he and his wife allegedly incurred in trying to locate "another room" at a higher price or in an area that they did not want. (Compl. at pp. 3, 6). Such alleged injuries, however, are *not compensable* under the CPA. *See Trujillo v. Northwest Trustee Services, Inc.*, 183 Wash. 2d 820, 836, 355 P. 3d 1100, 1108 (2015) (en banc) (recognizing that "emotional distress, embarrassment, and inconvenience are not compensable injuries under the CPA"); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d. 27, 57, 204 P. 3d 885 (2009) (recognizing that the CPA's requirement that injury be to business or property excludes "mental distress, embarrassment, and inconvenience."). In the absence of any compensable "injury to the [P]laintiff in his… business or property" that was

proximately caused by Expedia's alleged conduct, Plaintiff has failed to state a claim for relief under the CPA and such claim should be dismissed, with prejudice.

## CONCLUSION

For the reasons set forth above, the Court should grant Expedia's Motion to Compel Arbitration and dismiss this litigation so that Plaintiff's claims may be adjudicated by an arbitration conducted by the American Arbitration Association. In the alternative, the Court should dismiss all claims pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This the 29th day of March 2018.

WILLIAMS MULLEN

BY: /s/ Elizabeth C Stone
Elizabeth C. Stone
N.C. State Bar No. 36690
PO Box 1000
Raleigh, NC 27602
Telephone: (919) 981-4065
Fax: (919) 981-4300
Email: ecstone@williamsmullen.com
*Attorneys for Defendant Expedia*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. I further certify that I have mailed the foregoing document to the following non CM/ECT participants:

Frank Moreno
6801 Northbury Ln., #315
Charlotte, NC 28226

        WILLIAMS MULLEN

        BY: /s/ Elizabeth C Stone
        Elizabeth C. Stone
        N.C. State Bar No. 36690
        PO Box 1000
        Raleigh, NC 27602
        Telephone: (919) 981-4065
        Fax: (919) 981-4300
        Email: ecstone@williamsmullen.com
        *Attorneys for Defendant Expedia*