IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:18-CV-105

| | | |
|---|---|---|
| FRANK MORENO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| EXPEDIA, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendant's Motion to Compel Arbitration (Doc. No. 8). This motion has been fully briefed and is ripe for disposition.

I. **FACTUAL BACKGROUND**

Plaintiff Frank Moreno ("Plaintiff") initiated this lawsuit against Defendant Expedia ("Defendant") on January 30, 2018, asserting a claim under the Consumer Protection Act (RCW 19.86) of the State of Washington and a claim under the Federal Trade Commission Act ("FTCA") for "false or misleading" advertising arising out of Plaintiff's decision to utilize Expedia's website to book travel accommodations near Charleston, South Carolina in December 2017.

Defendant is a travel company based in the State of Washington that, among other things, owns and operates travel booking websites including www.expedia.com (the "Website") through which consumers may investigate, and reserve, a variety of travel-related products, including, as

1

it relates to this litigation, hotel rooms. As referenced above, consumers who utilize the Website agree to the then-applicable terms of use. Specifically, consumers are required to acknowledge that they have read and accepted the applicable Rules & Restrictions, Terms of Use, and Privacy Policy before completing a reservation and submitting payment. (*See* Doc. No. 8–1 ¶5; *see also* Doc. No. 8–3). The Terms of Use in effect in December 2017 encouraged consumers to "read these Terms of Use carefully, as they contain important information about limitations of liability and resolution of disputes through arbitration rather than in court[,]" and warned consumers that by "using this Website, booking any reservations for travel products or services on this Website, or contacting our call center agents, you agree that the Terms of Use then in force shall apply." (Doc. No. 8–4 p. 1). Those Terms of Use also contained a "Disputes" section that provides, in pertinent part:

> You agree to give us an opportunity to resolve any disputes or claims relating in any way to the Website, any dealings with our customer service agents, or any services or products provided, any representations made by us, or our Privacy Policy ("Claims") by contacting Expedia Customer Support or 1-877-787-7186. If we are not able to resolve your Claims within 60 days, you may seek relief through arbitration or in small claims court, as set forth below.
> **Any and all Claims will be resolved by binding arbitration, rather than in court**, except you may assert Claims on an individual basis in small claims court if they qualify…. **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including statutory damages, attorneys' fees and costs), and must follow and enforce these Terms of Use as a court would.**
> Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules, except as provided in this section. If your total Claims seek less than $10,000 we will reimburse you for filing fees you pay to the AAA and will pay arbitrator's fees….

(*Id.* at pp. 2–3) (emphasis in original). The Terms of Use also included a choice of law provision providing that any dispute between the parties would be governed by the FAA and federal arbitration law. (*Id.* at p. 3)

Plaintiff's Complaint alleges that on December 2, 2017, Plaintiff and his wife travelled from their home in Charlotte, North Carolina to Charleston, South Carolina to celebrate their wedding anniversary. Plaintiff had made a hotel reservation through the Website for a hotel in North Charleston. Upon arrival at the hotel, Plaintiff learned that his reservation was for December 24th. Plaintiff alleges that this mistake was caused by the Website. After being told that the price for the night of December 2nd would be higher than what Plaintiff believed he had reserved, Plaintiff and his wife decided to look for a hotel closer to the beach.

Plaintiff thereafter alleges that he went to the Website to identify alternative accommodations closer to the beach and noted that the Seaside Inn in Isle of Palms, South Carolina, had rooms available for $119. Plaintiff and his wife called Expedia's customer service line to cancel that reservation, refund their credit card, and see if they could get a room at the Seaside Inn.

Plaintiff alleges that the number of rooms available and the prices shown online differed materially from what the customer service representative was telling them over the phone. Plaintiff alleges that Defendant's representative urged him to quickly book before the room was taken by someone else. Plaintiff felt pressured and booked a room for $159. Defendant's records reflect that Plaintiff reserved a room at the Seaside Inn through the mobile version of the Website. When Plaintiff and his wife arrived at the Seaside Inn, the woman at the desk told them the price was only $119. Additionally, plaintiff alleges that 75% of the hotel was empty.

3

To complete his reservations for hotel accommodations through Expedia, Plaintiff was required to click a "Complete Booking" button. Above the button was a hyperlink to Defendant's Terms of Use. As noted above, in order to complete his reservation, Plaintiff was required to click a button acknowledging that he had read and accepted the Terms of Use, which contained the arbitration provision. Mr. Moreno does not deny that he has agreed to abide by Expedia's Terms of Use, and the arbitration agreement sent forth therein.

Plaintiff argues that Defendant's action constitutes a "bait and switch" in violation of Washington's Consumer Protection Act and the FTCA. Defendant argues that Plaintiff is bound to resolve his dispute in arbitration.

## II.     DISCUSSION

### A. Standard of Review

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The court must compel arbitration if: (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement. *Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (citing *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir 2013). Accordingly, the FAA directs federal courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F. 2d 809, 812 (4th Cir. 1989) ("The heavy presumption of arbitrability requires that when the scope of

the arbitration clause is open to question, a court must decide the question in favor of arbitration.").

Determining a Motion to Compel Arbitration requires a court to find whether the parties entered into a valid agreement to arbitrate. Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation, *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). However, "due regard must be given to the federal policy favoring arbitration." *Cara's Notions v. Hallmark Cards*, 140 F. 3d 566, 569 (4th Cir. 1998). Under North Carolina law, online consumer agreements are valid and enforceable when a user affirmatively acknowledges and agrees to contractual terms by checking a box or clicking a button as a condition of proceeding with his transaction. *See Carson v. Lending Tree, LLC*, 456 Fed. Appx. 234, 236 (4th Cir. 2011). Even if a plaintiff has not actually read the terms of an agreement, the user is considered to have constructive knowledge if he is required to acknowledge an agreement to proceed with a purchase. *See Bergenstock v. LegalZoom.com, Inc.*, 2015 WL 3866703, at *6 (N.C. Super. Ct., June 23, 2015).

**B. Validity of the Arbitration Agreement**

The determination of whether a contract is valid "depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 510 (W.D. Va. 2013). In particular, courts have held that when the terms of use are available to the consumer via a hyperlink, they are bound to those terms if they proceeded with the transaction. *See Keena v. Groupon, Inc.* 192 F. Supp. 3d 630, 636 (W.D.N.C. 2016).

Here, Plaintiff was required to review summary information about each reservation under the "Important information about your booking" section of the Website in order to reserve his hotel. (Doc. No. 8-3). As part of the review, Plaintiff was required to acknowledge that he had read and accepted the Terms of Use. A hyperlink was included on the webpage to ensure that users could read all applicable policies. By selecting the "Complete Booking" button, Plaintiff entered into a valid arbitration agreement with Defendant.

### C. Scope of Agreement

Plaintiff does not contend that the arbitration agreement he entered into was invalid. Instead, he argues that the ultimate cause of his claim was an interaction over the phone, and that therefore his claim is not subject to the arbitration agreement. However, the arbitration agreement defined its scope as including "any disputes or claims relating in any way to the Website, any dealings with our customer service agents, any services or products provided, any representations made by us, or our Privacy Policy ("Claims")." (Doc. No. 8–4, p.3). The telephone call clearly falls within this scope.

The applicability of the arbitration agreement holds especially true in light of the fact that Plaintiff also agreed to let the arbitrator rule on disputes over the scope of his jurisdiction. The arbitration agreement required arbitration to be conducted according to American Arbitration Association (AAA) Rules. AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim* or counterclaim." *See* Rule 7 of the AAA Commercial Arbitration Rules and Mediation Procedures (emphasis added). Courts have consistently found that AAA arbitration rules can be incorporated into a contract by reference. *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *see also Terminix Int'l Co. LP v.*

6

*Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205 (2d Cir. 2005).

IT IS THEREFORE ORDERED that Defendant's Motion to Compel Arbitration is hereby Granted, and Plaintiff's Motion to Strike is hereby Denied.

Signed: June 20, 2018

Graham C. Mullen
United States District Judge